**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DIANE NOWACZYK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 14 C 3710 |
| v. ) | |
| ) | |
| JOLIET CATHOLIC ACADEMY, ) | Judge Ronald A. Guzmán |
| JEFFREY BUDZ, CONGREGATION ) | |
| OF THE THIRD ORDER OF ST. ) | |
| FRANCIS OF MARY IMMACULATE , ) | |
| SOCIETY OF MT. CARMEL OF ) | |
| ILLINOIS, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff sues Congregation of the Third Order of St. Francis of Mary Immaculate ("St. Francis"), Society of Mt. Carmel of Illinois ("Mt. Carmel"), Joliet Catholic Academy ("JCA") and Jeffrey Budz for their alleged violations of Title VII and the Illinois Whistleblower Act and for breach of contract/promissory estoppel. Defendants have filed a motion pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) to dismiss some or all of the claims asserted against them. For the reasons set forth below, the Court grants in part and denies in part the motion.

## Facts

JCA is operated by its board members, St. Francis and Mt. Carmel. (Compl. ¶¶ 4, 6-8.) Jeffrey Budz is JCA's principal, and was plaintiff's supervisor throughout her tenure with the school. (*Id.* ¶ 5.)

On July 13, 2011, defendants agreed to employ plaintiff as a JCA administrator from July 1, 2011 to June 30, 2012. (*Id.* ¶ 13.) On March 20, 2012, defendants asked plaintiff if she intended to

return for the 2012-13 school year, and if so, told her she would receive a letter of intent and contract in May. (*Id.* ¶¶ 14-15.) Plaintiff said she wanted to return, but she did not receive a letter of intent or contract in May. (*Id.* ¶ 14.) Rather, in April and May, Budz spoke to her about JCA's intent to employ her for the next year, and she received the contract in June. (*Id.* ¶¶ 15, 17.)

In April 2012, plaintiff complained to Budz that a subordinate male employee was making inappropriate comments about women. (*Id.* ¶ 16.) Budz did not tell plaintiff whether he talked to the employee about his language. (*Id.*) However, shortly after plaintiff complained to Budz, the employee told plaintiff "he did not have to listen to her regarding a performance issue because he was working it out with . . . Budz." (*Id.*)

In August 2012, plaintiff reported to Budz that two male employees whom she supervised refused to take direction from her. (*Id.* ¶¶ 18-19.) Instead of speaking to the employees, Budz told plaintiff that she "needed to soften her management style." (*Id.* ¶ 19.)

Throughout August and September 2012, Budz regularly met and socialized with male employees, but not plaintiff. (*Id.* ¶ 20.)

In September 2012, plaintiff told a member of JCA's board, Father Bob Colaresi, that Budz was undermining her authority because of her gender. (*Id.* ¶ 21.) Colaresi spoke to Budz about his behavior, but it did not improve. (*Id.* ¶ 22.) In fact, for the rest of 2012 and 2013, Budz systematically excluded plaintiff from key meetings, decision making processes and strategic planning sessions. (*Id.* ¶¶ 23-25.)

In December 2102, plaintiff discovered that a male subordinate was improperly signing IRS forms that are required to document charitable contributions. (*Id.* ¶¶ 28-29.) When she told Budz

about the situation, he said she was "overreacting," the subordinate was a "good guy," and he was sure the subordinate "meant no harm." (*Id.* ¶ 30.)

In March 2013, defendants asked plaintiff if she intended to return for the following school year. (*Id.* ¶ 31.) She said yes, and defendants told her she would receive a letter of intent in April, and a contract in May. (*Id.* ¶ 32.) The documents did not arrive when promised, but in April and May, Budz spoke to her about JCA's intent to employ her for the next school year. (*Id.* ¶¶ 33-34.)

On June 25, 2013, during a performance review at which Budz was present, plaintiff placed on probation the employee who had improperly signed the IRS donation forms. (*Id.* ¶ 35.) Upon hearing the news, the employee stormed out of the room, and Budz told plaintiff that the IRS issue was "a done deal" and he did not want to hear any more about it. (*Id.* ¶ 36.)

On June 26, 2013, Budz told plaintiff her contract would not be renewed, and refused to tell her why. (*Id.* ¶ 37.) All of plaintiff's male colleagues had their contracts renewed. (*Id.*)

**Discussion**

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations" but must contain "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

St. Francis and Mt. Carmel argue that the Title VII claims plaintiff asserts against them in Counts I and II fail because she has not alleged that they were her employer. *See Knight v. United Farm Bureau Mut. Ins.*, 950 F.2d 377, 380 (7th Cir. 1991) (stating that plaintiff "must prove the

existence of an employment relationship in order to maintain a Title VII action" against defendant). Plaintiff contends that her allegations suggest that she was employed jointly by JCA, St. Francis and Mt. Carmel.

"When facing questions [about] the employee-employer relationship under Title VII . . . , we 'look to the "economic realities" of the relationship and the degree of control the [alleged] employer exercises.'" *Heinemeier v. Chemetco, Inc.*, 246 F.3d 1078, 1082 (7th Cir. 2001) (quoting *Knight v. United Farm Bureau Mut.*, 950 F.2d 377, 378-80 (7th Cir.1991)); *EEOC v. Ill.*, 69 F.3d 167, 169 (7th Cir. 1995) (an entity that does not directly employ plaintiff can be held liable for discrimination only if "it so far controlled the . . . employment relationship" that it is plaintiff's "de facto or indirect employer"); *see also Papa v. Katy Indus., Inc.*, 166 F.3d 937, 940-41 (7th Cir. 1999) (holding that parent corporation can be held liable for subsidiary's discrimination if the parent "directed the discriminatory act, practice, or policy of which the employee . . . complain[s]").

Plaintiff alleges that St. Francis and Mt. Carmel controlled her employment with JCA because they "have the exclusive authority to approve JCA policies, including those which affected [her] employment," and "[u]pon information belief," they "hired" and "participated in [the] decision" to fire her. (Compl. ¶ 8.) However, these wholly conclusory allegations are belied by: (1) her allegations that Budz supervised her, told her she would be hired for the 2011-12 and 2012-13 school years before she received any documents to that effect, and told her "he would not be renewing her administrator . . . contract" for the 2013-14 school year; (2) her allegations that Mt. Carmel board member Colaresi advised Budz to treat plaintiff respectfully but did not direct Budz to do so or take action against him when Budz failed to do so; (3) her failure to identify the entity from which she received the letters of intent and employment contracts for the 2011-12 and 2012-13 school years; and

4

(4) her failure to identify the entity named as the employer in the employment contracts. (*See id.* ¶¶ 15-25, 30-34, 36-37.) Taken together, plaintiff's allegations do not plausibly suggest that St. Francis and Mt. Carmel controlled her employment with JCA. Accordingly, the Court grants their motion to dismiss the Title VII claims.[1]

Plaintiff's Whistleblower Act claims against St. Francis and Mt. Carmel suffer the same fate. That statute prohibits "[a]n employer [from] retaliat[ing] against an employee for refusing to participate in an [illegal] activity," and defines "employer" as "an . . . entity that has one or more employees in this State." 740 Ill. Comp. Stat. 174/5, 20. The parties have not cited, and the Court has not found, any case that sets forth the standard for determining whether defendants are joint employers for purposes of the Act. In the context of the Illinois Labor Relations Act, however, the Illinois Supreme Court has said:

> The test for the existence of joint employers is whether two or more employers exert significant control over the same employees – where from the evidence it can be shown that they share or co-determine those matters governing essential terms and conditions of employment. Relevant factors to consider in making this determination include the putative joint employer's role in hiring and firing; promotions and demotions; setting wages, work hours, and other terms and conditions of employment; discipline; and actual day-to-day supervision and direction of employees on the job.

*Am. Fed'n of State, Cnty. & Mun. Emps, Council 31 v. State Labor Relations Bd.*, 839 N.E.2d 479, 485-86 (Ill. 2005) (quotations omitted). Given that the gravamen of this test – control – is the same

---

[1]Plaintiff contends that joint employer test set forth in *DiMucci Construction Co. v. NLRB*, 24 F.3d 949 (7th Cir. 1994), which is used in the context of the National Labor Relations Act, governs here. Because, however, plaintiff's allegations do not support an inference of joint employment under the *DiMucci* test, the result would be no different even if it controlled. *See id.* at 952 ("Factors to consider in determining joint employer status are (1) supervision of employees' day-to-day activities; (2) authority to hire or fire employees; (3) promulgation of work rules and conditions of employment; (4) issuance of work assignments; and (5) issuance of operating instructions.").

5

as the one that applies to plaintiff's Title VII claims, her Whistleblower Act claims against St. Francis and Mt. Carmel fail for the same reasons.

That leaves plaintiff's claim that defendants breached their agreement to employ her for the 2013-14 school year or are liable for promissory estoppel because they did not honor their promise to employ her for that year. To state a viable contract claim, plaintiff must allege that a contract exists, she performed her obligations under it, defendants did not, and she was damaged as a result. *Mannion v. Stallings & Co., Inc.*, 561 N.E.2d 1134, 1138 (Ill. App. Ct. 1990). To state a viable claim for promissory estoppel, plaintiff must allege that defendants made an unambiguous promise to her, they expected her to rely on the promise, she did so, and was damaged as a result. *Newton Tractor Sales, Inc. v. Kubota Tractor Corp.*, 906 N.E.2d 520, 523-24 (Ill. 2009). Viewed favorably to her, plaintiff's allegations suggest that JCA, through Budz, may have entered into an agreement to employ her for the 2013-14 school year or unambiguously promised to do so. (*See* Compl. ¶¶ 31-34.) They do not, however, suggest that St. Francis or Mt. Carmel did either. Thus, the Court dismisses plaintiff's contract and estoppel claims against these entities.

Alternatively, JCA and Budz argue that the contract claim should be dismissed because plaintiff has not alleged that she performed her contractual obligations. However, her allegations support the inference that defendants prevented her from performing. Thus, her inability to allege performance is not fatal to her claim. *See Oakleaf of Ill. v. Oakleaf & Assocs., Inc.*, 527 N.E.2d 926, 933 (Ill. App. Ct. 1988) ("A party whose actions preclude performance by the other party may not, however, complain of the second party's nonperformance.").

Lastly, JCA and Budz assert that the contract and estoppel claims fail because any alleged agreement or promise violates the statute of frauds. Even if that is true, however, the statute of frauds

6

is an affirmative defense around which plaintiff is not required to plead. *See* 735 Ill Comp. Stat. 5/2-613(d); 5C Charles Alan Wright, Arthur R. Miller, May Kay Kane, Richard L. Marcus & Adam Steinman, Federal Practice and Procedure § 1381 (3d ed.) (explaining that "the legal sufficiency of a defense is determined under the applicable state substantive law, although the federal rules control the sufficiency of the manner in which the defense is pleaded and the procedure for raising a question as to its sufficiency by motion.") (footnotes omitted). Because "[c]omplaints need not contain any information about defenses and may not be dismissed for that omission," *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004), defendants' assertion of the statute of frauds is not a basis for dismissing the contract and estoppel claims.

## **Conclusion**

For the reasons set forth above, the Court grants in part and denies in part defendants' motion to dismiss [19]. The motion is granted with respect to the claims asserted against St. Francis and Mt. Carmel, which are dismissed without prejudice, and denied as to the claims asserted against JCA and Budz. Plaintiff has fourteen days from the date of this Order to amend her claims against St. Francis and Mt. Carmel, if she can do so and comply with Rule 11. If she fails to amend, the Court will dismiss the claims against St. Francis and Mt. Carmel with prejudice.

**SO ORDERED.**                                **ENTERED:   July 23, 2014**

_____
**HON. RONALD A. GUZMAN**
**United States District Judge**